UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

IN RE:

CHRISTOPHER T. FURLOUGH,

CASE NO. 15-02254-5-SWH
CHAPTER 12

DEBTOR.

## CHAPTER 12 PLAN

The Debtor, Christopher T. Furlough, respectfully proposes the following Chapter 12 Plan of Reorganization for the adjustment of his debts pursuant to 11 U.S.C. § 1221. Attached hereto as Exhibits "A" and "B" are summaries of the Debtor's assets and liabilities. A liquidation analysis is attached as Exhibit "C." The Debtor's projections and a summary of plan payments are attached as Exhibits "D" and "E." Attached as Exhibit F is an analysis of pre-petition transfers made by the Debtor for purposes of the preparation of Exhibit C.

## ARTICLE I

## SUMMARY OF THE PLAN

This Plan shall continue for a period of five (5) years from its effective date. The property of this Debtor is being valued and the claim of each secured creditor is being treated as secured in the amount of the value of the property securing such claim. Costs of administration are to be paid on the effective date of the Plan unless otherwise agreed to or directed by the Court. Priority claims are being paid in full as allowed. All disposable income will be paid to the Trustee for distribution to unsecured creditors for the term of the Plan. The Plan is being proposed in good faith and not for any purpose prohibited by law. Any deficiency claims of secured creditors will be treated as unsecured claims unless otherwise ordered by the Court. The Debtor hereby submits to the supervision and control of the Trustee all future earnings or other future income as is necessary for the execution of this Plan.

## ARTICLE II

## DEFINITIONS

1.  "ALLOWED CLAIMS" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an

1

objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed. Allowed claims shall not include interest on the principal amount of such claim subsequent to the petition date, except as may be otherwise provided herein.

     2.    "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

     3.    "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 12 cases.

     4.    "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

     5.    "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article VI of the Plan.

     6.    "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1224.

     7.    "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1224.

     8.    "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

     9.    "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 12 case of the Debtor.

     10.    "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

     11.    "DEBTOR" shall mean the Debtor (or Debtors, if more than one) identified on the first page of this Plan.

     12.    "DISPOSABLE INCOME" shall mean income received by the Debtor and which is not reasonably necessary to be expended for the maintenance or support of the Debtor's principals; for the payment of expenditures necessary for the continuation, preservation, and operation of the Debtor's business; and for Plan payments; and will be calculated and determined in accordance with Sections 1225 and 1325 of the Code.

2

13.    "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

14.    "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

15.    "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

16.    "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

17.    "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 12 petition.

18.    "PLAN" shall mean this Chapter 12 Plan of Reorganization in its present form or as it may be amended or modified.

19.    "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

20.    "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

21.    "TRUSTEE" shall mean that certain person who shall perform the duties and have the rights set forth herein pursuant to 11 U.S.C. § 1202. Unless hereafter modified by the Court, the Trustee is Richard M. Stearns.

22.    "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

## ARTICLE III

### PROPERTY VALUATIONS

The Debtor proposes to value his property as set out in Exhibit "A" attached hereto.

3

## ARTICLE IV

## LIVING EXPENSES

The Debtor's budget is attached hereto as Exhibit "E." The budget indicates living expenses will be $38,000.00 (exclusive of Plan payments) annually. However, the living allowance of the Debtor may be periodically increased by $500.00 or less by approval from the Trustee. Any other changes shall be made only upon application and approval by the Court after notice to all creditors.

## ARTICLE V

## LIQUIDATION TEST

To the extent the Debtor has net equity in his property, such net equity is included in the liquidation test, which is attached hereto as Exhibit "C." The Debtor shall pay to the Trustee funds for payment of (1) costs of administration, including trustee fees and expenses and Debtor's attorney's fees; (2) priority claims, and (3) distribution to unsecured creditors over the life of the Plan. Unsecured creditors will receive the amount they would have received if the Debtor was liquidated in a Chapter 7 liquidation.

## ARTICLE VI

## DISPOSABLE INCOME

For the term of this Plan, all of the Debtor's disposable income, as defined in Section 1225(b)(2), regardless of the amount, will be paid to the Trustee for payment of costs of administration and distribution to creditors.

## ARTICLE VII

## CLASSIFICATION AND TREATMENT OF CLAIMS

### Class 1 - Costs of Administration.

(1)     Description of Debt. This class includes claims for compensation and expenses of professionals, Court costs and all expenses incurred by the Debtor after the filing of its petition and before the entry of the order of confirmation. All cost of administration claims, except compensation and expenses of professionals and Court costs, shall be paid in full as they become due, on the effective date of the Plan, or as shortly thereafter as may reasonably be possible. Claims for compensation and expenses of professionals allowed pursuant to 11 U.S.C. Section 330 and Court costs shall be paid upon approval by the Court and as directed by the Court.

4

(2)    Treatment.  All cost of administration claims, except compensation and expenses of professionals and Court costs, shall be paid in full as they become due, on the effective date of the Plan, or as shortly thereafter as may reasonably be possible.  Claims for compensation and expenses of professionals allowed pursuant to 11 U.S.C. Section 330 and Court costs shall be paid upon approval by the Court and as directed by the Court.

### Class 2 - Ad Valorem Tax Claims.

(1)    Description of Debt.  All priority ad valorem tax claims, if any are filed, shall be paid in full as allowed by the Court over the term of the Plan.  The Debtor is not aware of any past due claims for ad valorem taxes.

(2)    Treatment.  In the event any claims for past due taxes are filed, the Debtor will pay such obligations in full, within five years from the petition date, with interest at the rate of 5.25% per annum.

### Class 3 – Tax Claims.

(1)    Description of Debt.   This class consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes, and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service, the North Carolina Department of Revenue or other taxing authorities, plus interest as allowed by law.

The Internal Revenue Service has filed claim number 4 as a priority tax claim in the amount of $646.97.

(2)    Treatment.  The Debtor proposes the following treatment:

**Cost and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date. *The Debtor does not anticipate any cost of administration tax claims.*

**Unsecured priority tax claims**, described in Section 507(a)(8) of the Bankruptcy Code shall be paid in full in annual installments over a period not exceeding five (5) years from the Petition Date.  Annual payments in the amount of $129.39 shall be made beginning on December 15, 2015, and continuing annually thereafter.

**Secured claimants**, if any, shall retain their secured interest in the property of the Debtor.  The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest.  In the event any secured tax claims are filed, the Debtor shall pay these claims in annual payments over a period not exceeding five (5) years from the Petition Date, with annual payments commencing on December 15, 2015, and continuing annually

thereafter, with interest at the rate of 5.25% per annum. *The Debtor does not anticipate any secured tax claims.*

**Unsecured general tax claims**, if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### Class 4 – AgCarolina Farm Credit, ACA ("AgCarolina"):

(1)  Description of Debt.  This class consists of the Debtor's two obligations to AgCarolina, more particularly described as follows:

(a)  Note 82-04:  The Debtor and AgCarolina entered into a Fixed Rate Note dated March 24, 2010.  The note is secured by 229.24 acres on Highway 64 in Martin County, equipment specified in the security agreement, and crops. AgCarolina filed claim number 21 in the amount of $145,787.51.

(b)  Note 82-18.  The Debtor and AgCarolina entered into a Revolving Variable Rate Note dated February 12, 2015, secured by a third priority lien on 229.24 acres on Highway 64 in Martin County, equipment specified in the security agreement, and crops. AgCarolina filed proof of claim number 22 in the amount of $403,671.65.

(2)  Treatment. The AgCarolina loans shall be partially satisfied through the sale of its collateral. The Debtor is waiting for the proceeds of the sale of its wheat crop, and has received a check from the sale of the soybeans, which shall be provided to AgCarolina for application against its obligations. In addition, the Debtor will sell the real property located at 33829 US Highway 64, Jamesville, Martin County, North Carolina, comprised of 229 acres.  The Debtor is in the process of negotiating a purchase contract for this property. The Debtor will obtain a purchase contract no later than September 1, 2015, for a minimum purchase price of $450,000.00.  This sale shall close no later than February 1, 2016. The closing date will depend on whether the purchase contract is scheduled to close after the 2015 crops are harvested or whether the Debtor is able to negotiate a contract which allows him to close on the property with a right to harvest the crops after the closing. The net proceeds of sale, after payment of any costs of sale, including any commissions to brokers and any attorney's fees related to such sale, shall be paid to lienholders in accordance with the priorities of liens. The Debtor expects that this sale will satisfy Note 82-04, plus the second priority lien of the FSA, with the net proceeds applied against Note 82-18.

Finally, the Debtor will also sell the following pieces of equipment, which are subject to AgCarolina's lien:

1994 JD 4560 Tractor, SN 4560P003503

1990 Harrell Module Builder

Dyna Drive

Miscellaneous parts, old equipment, and tanks (approximately ½ of value of the items listed on Exhibit A to the Petition under the Miscellaneous Parts)

The Debtor will sell the above equipment at an auction to be conducted by Country Boys Auctions no later than December 31, 2015, free and clear of all liens and encumbrances. The proceeds of sale, after deducting any costs of sale, including commissions to Country Boys, and any attorney's fees related to the sale, shall be paid subject to the priorities of liens of record. The Debtor estimates the following amounts will be realized from the above described sales and shall reduce AgCarolina's two obligations as follows:

| | |
|---|---|
| Note 82-04 | Satisfied from Martin Co. Sale |
| Note 82-18 | $403,671.65 |
| Less proceeds from wheat and beans in bin already delivered | $ 44,500.00 |
| Less Remaining wheat proceeds | $ 64,320.00 |
| Less Soybean proceeds | $ 26,000.00 |
| Less Equipment proceeds | $ 30,000.00 |
| Less Martin Co. net proceeds (est) | $  5,000.00 |
| Estimated balance remaining | $233,851.65 |

The remaining balance of Note 82-18, estimated for purposes of this Plan to be $233,851.65, plus accrued interest and costs allowed under Section 506(b), shall be shall be amortized over 8 years, with interest at 5.25% per annum. Annual payments estimated at $36,548.48 shall commence December 15, 2015, and continue annually thereafter.

**Class 5 – AGCO Finance, LLC ("AGCO"):**

(1)  <u>Description of Debt</u>.  The Debtor and AGCO entered into a Retail Installment Sales Contract, whereby the Debtor purchased a sunflower plow. The agreement provided for interest at the rate of 5.49% per annum, with three annual payments of $5,804.47 commencing on June 1, 2015, secured by the sunflower plow. AGCO filed claim number 1 in the amount of $16,432.15.

(2)  <u>Treatment</u>.  This obligation shall be amortized over 8 years, with interest at the rate of 5.25% per annum. Annual payments in the amount of $2,568.15 shall commence on December 15, 2015.

**Class 6 – Ally Financial ("Ally"):**

7

(1)    Description of Debt.  The Debtor and Ally entered into two obligations more particularly described as follows:

(a)    Note 1.  The Debtor and Ally entered into a Retail Installment Sales Contract for the purchase of a 2012 Dodge Ram 2500. The Debtor estimates that Ally was owed $31,000.00 on this obligation as of the petition date.

(b)    Note 2.  The Debtor and Ally entered into a Retail Installment Sales Contract for the purchase of a 2013 Cadillac Escalade. The agreement provided for interest at the rate of 6.25% per annum, with five annual payments of $12,575.07 commencing on December 30, 2014. Ally filed claim number 6 in the amount of $48,359.61.

(2)    Treatment.  Each of these obligations shall be treated as follows:

(a)    Note 1.  This obligation shall be treated as a secured obligation in the amount of $27,475.00, representing the fair market value of the collateral. The Debtor shall amortize this obligation over 5 years, with interest at the rate of 5.25% per annum. Monthly payments in the amount of $521.64 shall commence on the fifteenth day of the first full month following the Effective Date of the Plan.

(b)    Note 2.  This obligation shall be treated as a secured obligation in the amount of $48,359.61. This obligation shall be amortized over 5 years, with interest at the rate of 5.25% per annum. The Debtor shall commence annual payments in the amount of $11,247.15 on December 15, 2015.

### Class 7 – Branch Banking & Trust Co. ("BB&T"):

(1)    Description of the Debt. The Debtor and BB&T entered into a promissory note dated April 17, 2012 in the original principal amount of $190,000.00. The note is secured by a deed of trust encumbering the Debtor's residence located at 913 Beasley Road, Roper, NC. BB&T filed claim number 5 in the amount of $181,694.44.

(2)    Treatment.  This obligation shall be treated as a fully secured obligation. This obligation shall be amortized over 30 years, with interest at a rate of 5% per annum. Monthly payments in the amount of $975.38 shall be due on the  fifteenth day of the first full month following the Effective Date and monthly thereafter.

### Class 8 – CNH Industrial Capital America, LLC ("CNH"):

(1)    Description of the Debt. The Debtor and CNH entered into various obligations further described as follows:

8

(a)     Note 1.   The Debtor and CNH entered into a Retail Installment Sale Contract and Security Agreement executed on November 30, 2012, for the purchase of a John Deere Tractor 4WD, model 9400. CNH filed claim number 2 in the amount of $71,599.96.

(b)     Note 2.   The Debtor and CNH entered into a Retail Installment Sale Contract and Security Agreement executed on January 1, 2013, for the purchase of a MacDon Combine Head, model FD75. CNH filed claim number 3 in the amount of $57,104.72.

(c)     Note 3.   The Debtor and CNH had previously entered into a financing agreement for a Case IH Magnum Tractor. This tractor was traded in at the time of the execution of Note 1, although the UCC on this collateral was never cancelled.

CNH asserts that these obligations are cross-collateralized.

(2)     Treatment. The Debtor's obligations with CNH shall be treated as follows:

(a)     Note 1.   The Debtor will surrender the collateral securing this claim to CNH on or before the Effective Date of the Plan. Any deficiency remaining after the sale of this equipment shall be treated in the Unsecured Creditor Class below.

(b)     Note 2.   This obligation shall be treated as a fully secured obligation. This obligation shall be amortized over 8 years, with interest at a rate of 5.25% per annum. The Debtor shall commence annual payments on December 15, 2015 in the amount of $8,924.85.

(c)     Note 3.   This lien shall be cancelled.

### Class 9 - Deere & Company ("Deere").

(1)     Description of Debt. This class consists of the Debtor's five obligations to Deere, more particularly described as follows:

a.     Note 1:   The Debtor and Deere entered into a Loan Contract – Security Agreement dated February 14, 2014, secured by a first priority lien on the Debtor's JD 8285R Row Crop Tractor. Deere filed claim number 8 in the total amount of $179,849.66.

b.     Note 2:   The Debtor and Deere entered into a Loan Contract – Security Agreement dated January 10, 2013, secured by a first priority lien on a JD 1790 Planter. Deere filed claim number 9 in the amount of $55,043.55.

c.     Note 3:   The Debtor and Deere entered into a Loan Contract – Security Agreement dated March 21, 2014, secured by a first priority lien on the Debtor's JD 9670 Combine. Deere filed claim number 10 in the total amount of $194,400.66.

9

d.      Note 4: The Debtor and Deere entered into a Loan Contract – Security Agreement dated May 22, 2013, secured by a first priority lien on the Debtor's JD Trail Gator. Deere filed claim number 11 in the total amount of $9,879.14.

e.      Note 5: The Debtor and Deere entered into a Loan Contract – Security Agreement dated April 24, 2012, secured by a first priority lien on the Debtor's JD 2410 Chisel Plow. Deere filed claim number 12 in the total amount of $17,128.20.

(2)   Treatment.  The Debtor shall treat the obligations of Deere as follows:

a.      Note 1: This claim shall be treated as a fully secured obligation, amortized over 6 years, with interest at the contract rate of 2%. Annual payments in the amount of $32,107.81 shall commence December 15, 2015, and shall continue annually thereafter.

b.      Note 2: This claim shall be treated as a fully secured obligation, amortized over 6 years, with interest at the contract rate of 4.25%. Annual payments in the amount of $10,585.83 shall commence December 15, 2015, and shall continue annually thereafter.

c.      Note 3: This claim shall be treated as a fully secured obligation, amortized over 6 years, with interest at the contract rate of 2.9%. Annual payments in the amount of $35,767.03 shall commence December 15, 2015, and shall continue annually thereafter.

d.      Note 4: The Debtor will surrender the collateral securing this claim to Deere on the Effective Date of the Plan. Any deficiency remaining after the sale of this equipment shall be treated in the Unsecured Creditor Class below.

e.      Note 5: The Debtor will surrender the collateral securing this claim to Deere on the Effective Date of the Plan. Any deficiency remaining after the sale of this equipment shall be treated in the Unsecured Creditor Class below.

**Class 10: USDA Farm Service Agency ("FSA"):**

(1)   Description of Debt. The Debtor and FSA entered into a promissory note dated March 24, 2010, secured by a second priority deed of trust encumbering 229.24 acres on US Highway 64 in Jamesville, North Carolina. FSA also has a second priority lien on certain grain bins previously pledged to AgCarolina. FSA filed claim number 7 in the amount of $289,839.41.

(2)   Treatment. The Debtor will sell the real property securing this claim no later than February 1, 2016, as described above in the Class 4 treatment for AgCarolina. The net proceeds

10

of sale, after payment of all costs of sale, including any commissions of any brokers and attorney's fees, and the senior lien of AgCarolina as to Note 82-04, will be paid to the FSA in accordance with the priorities of liens in full satisfaction of this claim, with the net proceeds of sale distributed in accordance with the priorities of the lienholders.

### Class 11: Assumed Executory Contracts:

(1)     Description of the Claims. This Class consists of all of the executory contracts and leases not previously assumed by the Debtor which have not expired according to their terms. The executory contracts include within this Class are listed on Exhibit B to the Plan.

(2)     Treatment. The Debtor hereby assumes all of the executory contracts and leases within this Class, to the extent not previously assumed.

### Class 12 - General Unsecured Claims.

(1)     Description of Debt.    This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court, and estimated deficiency claims.

(2)     Treatment.   The Debtor estimates its total unsecured debt at $456,199.64 based on claims scheduled by the Debtor, proofs of claim filed as of the date of the filing of this Plan, and estimated deficiency claims.  The Debtor will pay to the Trustee the greater of (i) all disposable income for the term of the Plan for five (5) years; or (ii) the amount required to satisfy the liquidation test, currently shown on Exhibit C to be $72,907.26; provided however, that the amount paid to the Trustee shall not exceed the amount of the Allowed Claims in this Class. Each year, the Debtor will pay the unsecured creditors a minimum payment of $14,581.45, representing 1/5 of the amount to be paid as shown on Exhibit C. The Debtor will pay the allowed claims in this class by annual payments based on his disposable income.

## ARTICLE VIII

## EXECUTION OF PLAN

1.     All proceeds of the Debtor's farming operation shall be deposited in the operating account in the name of the Debtor.  All farming proceeds and all payments in the furtherance of the farming operation shall pass through this farm account and shall be reflected in the monthly reports submitted by the Debtor each month during the life of the Plan.

2.     Operating Loans:  Except as provided herein, the Debtor shall be authorized upon confirmation of the Plan to obtain such future financing and operating loans as may be required for its normal farming operations without further order of the Court or permission of the Trustee, with said operating loans to be secured by crops and their proceeds, liens against unencumbered real or

11

personal property, and/or liens junior to prior security interests in real or personal property of the Debtor. In addition, the Debtor shall have the rights and powers provided by Section 364 of the Code.

        3.     <u>Payment Due Dates</u>. Each payment shall be due on the date specified herein for each Class. In the event a payment is not made within 30 days of the due date, the automatic stay shall lift without need for further action by such creditor or Orders of this Court, and such creditor shall be entitled to exercise their state law remedies.

        4.     The Debtor will reconvey the Airport Farm to the Debtor on or before the Effective Date of the Plan.

**ARTICLE IX**

**MODIFICATION OF PLAN**

        The Debtor may request the Court to modify this Plan before or after confirmation in accordance with the provisions of 11 U.S.C. Section 1223 and Section 1229. In addition, the Debtor may request the Court, after notice to the affected creditor or creditors and a hearing, may approve modifications of the long-term debt for cause at any time prior to completion of payments under the Plan.

**ARTICLE X**

**GENERAL PROVISIONS**

        1.     <u>Disposable Income</u>: The Debtor shall submit all or such a portion of its future earnings or other future income to the supervision and control of the Trustee as may be necessary for execution of this Plan. As provided hereinabove, all disposable income will be paid to the Trustee for distribution against the allowed claims of unsecured creditors for the term of the Plan.

        2.     <u>Plan Payments and Administrative Expense</u>: All Plan payments shall be paid inside the Plan and shall include administrative costs of 5%, unless otherwise modified by the Court.

        3.     <u>Court to Retain Jurisdiction</u>: The Court shall retain jurisdiction over this case pursuant to, and for the general purposes of, 11 U.S.C. § 105 and § 1227, and, in addition, for the following specific purposes:

              a)     Determination of all issues and disputes regarding title to property of the estate, including, but not limited to, recovering pre-petition claims and property belonging to the estate;

             b)      Fix allowances of compensation and reimbursement of expenses pursuant to § 330 of the Code;

             c)      Correct any defect, cure any omission or reconcile any inconsistency in this Plan or the order of confirmation as may be necessary or appropriate to carry out the purposes and intent of the Plan;

             d)      Determine pending applications for the assumption or rejection of executory contracts and unexpired leases under § 365 of the Code and determine the allowance of claims resulting therefrom;

             e)      To consider any amendments or modifications to the Plan;

             f)      To issue such orders as are necessary or appropriate to carry out the provisions of the Plan;

             g)      To enjoin interference with the implementation and consummation of the Plan;

             h)      To liquidate damages in connection with any disputed, contingent, or unliquidated claims; and to hear and rule on claims and objections thereto;

             i)      To determine all controversies and disputes relating to or which may arise in connection with the Chapter 12 case, or in connection with the interpretation and implementation of the Plan, including but not limited to matters relating to the Debtor's use of cash collateral and any objections thereto;

             j)      To determine all controversies and disputes that may arise out of or relate to a federal crop insurance policy for losses claimed by the Debtor on pre-petition or post-petition crops; and

             k)      For such other matters as may properly and necessarily be brought before the Court.

     4.      <u>Sales Free of Interests</u>:  The Debtor shall be authorized to apply to the Court for such sales of farmland or farm equipment free of liens and interests as may be necessary to effectuate the terms of this Plan, or may otherwise be in the best interest of the estate, as authorized by §§ 363 and 1206 of the Code.  No notice or hearing is required for the Debtor to sell goods or products in the ordinary course of business.

     5.      <u>Vesting of Property in Debtor</u>:  Upon confirmation, title to the assets of the Debtor shall be retained by and re-vest in the Debtor free and clear of all claims, liens, security, and

equitable interests, including liens which represent the under-secured amounts of scheduled secured claimants, except as may be otherwise provided by this Plan.

6.    Projected Payments and Feasibility:  Debtor has prepared a farm plan for the year 2015 which will be a factor in the Court's determination of good faith, commitment of all disposable income, and feasibility of this Chapter 12 Plan.  These projections are attached hereto as Exhibit "D," along with a summary of plan payments attached hereto as Exhibit "E."

7.    Use of Cash Collateral:  The Debtor shall be authorized to use cash collateral in the ordinary course of its business without specific order of the Bankruptcy Court or consent of the affected secured creditors, if any.

8.    Retention of Liens:  All creditors whose claims are treated as secured in this Plan shall retain their liens on the collateral securing their respective claims until claims are paid in full in the amount allowed as secured as set forth in this Plan, except to the extent that said liens may be avoided pursuant to §§ 506(d) and 522 of the Code, and except as to crop liens and after-acquired property as provided herein and as provided by the terms of the Code.  Prepetition crop liens and after-acquired property clauses shall not attach to and shall have no affect on post-petition crops, government program payments relating to a period post-petition, or other property acquired or to which the Debtor obtains an interest post-petition.

9.    All terms of the loan documents will remain valid and enforceable unless expressly modified herein.

10.    Automatic Stay:  Notwithstanding the entry of an order confirming this Plan, the automatic stay provided by 11 U.S.C. Section 362 shall continue in effect as to the Debtor and all property retained by the Debtor until the earlier of: 1) the Plan's completion or termination, 2) a dismissal of this case pursuant to Section 1208(c), 3) the entry of an Order of Discharge, or 4) the entry of an order lifting the automatic stay.  The automatic stay shall not apply to future crops or property given as collateral for post-confirmation operating loans.

11.    Non-interference:  No person or entity may commence or continue any action or proceeding, or perform any act to interfere with the implementation and consummation of this Plan and the payments to be made hereunder.

12.    Executory Contracts and Unexpired Leases:  The Debtor reserves the right to assume or reject, pursuant to Section 365 of the Code, any executory contract or unexpired lease not assumed or rejected prior to the confirmation date.  The Debtor rejects any portions of contracts or leases that purport to require that any disputes or controversies arising thereunder or related thereto be submitted to arbitration.

13.    Payment of Attorney Fees:  It is anticipated that after confirmation, there will be unpaid attorney fees earned by counsel for the Debtor, and that from time to time the services of the

Debtor's attorney may be needed in furtherance of the Debtor's reorganization and successful completion of the Plan. Counsel will periodically file an application for the accrued attorney fees and expenses. Debtor will pay all attorney fees and costs approved by the Court within thirty (30) days of such Court approval.

14.    Deficiency Claims:  Unless otherwise provided herein, a creditor may file an amended claim for a deficiency amount within 180 days of taking possession of the collateral securing its claim.

15.    Federal Farm Programs:  Debtor is authorized to apply for, receive benefits from, and participate in USDA farm programs, including operating loan assistance, direct and cyclical payments (DCP program), and other programs, subsidies and assistance, without the necessity of further orders of the Court.

16.    Insurance Coverage:  The Debtor shall at all times maintain appropriate loss and casualty insurance on the collateral and shall provide proof of such coverage as requested by the secured creditor at reasonable intervals.

17.    Co-Debtor Obligations:  For so long as the Debtor complies with the obligations under this Plan, any co-debtor shall enjoy status as a co-debtor and have the protections of the co-debtor stay under Section 1201.

18.    Objections preserved.  By the submission of this Plan, Debtor does not waive any objections it may have to any claims filed in this case.

This the 21st day of July, 2015.

LAURIE B. BIGGS
N.C. State Bar #31845
STUBBS & PERDUE, P.A.
Attorney for Debtor
9208 Falls of Neuse Road, Suite 201
Raleigh, NC 27615
(919) 870-6258
(919) 870-6259
lbiggs@stubbsperdue.com

CHRISTOPHER T. FURLOUGH

15

CHRISTOPHER T. FURLOUGH
CASE NO. 15-02254-5-SWH
EXHIBIT A - ASSETS

| REAL PROPERTY | | VALUE | Notes |
|---|---|---|---|
| 229.24 acres, 33829 US Hwy 64, Jamesvill, NC (Martin County) | $ | 328,710.00 | |
| Residence & 2.78 acres, 913 Beasley Rd., Roper NC (owned TBE w/ wife) | $ | 85,150.00 | |
| 1/2 interest in 17 acres, Beasley Rd., Roper, NC (TIC w/ sister) | $ | 10,018.00 | |
| 1/2 interest in 73.22 acres, 718 Beasley Rd., Roper, NC (TIC w/ sister) | $ | 34,175.00 | |
| 1/2 interest in 37 acres, Beasley Rd., Roper, NC (TIC w/ sister) | $ | 13,100.00 | |
| 1/2 interest in 2 acres, Beasley Rd., Roper, NC (TIC w/ sister) | $ | 7,500.00 | |
| Airport farm - 44 acres | $ | 22,000.00 | Property to be reconveyed to Debtor |
| Total: | $ | 500,653.00 | |

| PERSONAL PROPERTY | | | |
|---|---|---|---|
| DIP Account - Southern Bank | $ | 10,000.00 | |
| Household goods, clothing, firearms, | $ | 3,350.00 | |
| IRA at Southern Bank | $ | 3,100.00 | |
| | | | |
| CT Furlough & Sons, LLC - 50% membership interest | $ | - | |
| Furlough Trucking, Inc. - 100% shareholder | $ | 50,000.00 | |
| 1992 Chevy GMT 400 Farm Service Truck | $ | 1,000.00 | |
| 2012 Doge Ram 2500 Truck | $ | 27,319.00 | |
| 2013 Cadillac Escalade | $ | 47,558.00 | |
| Grain Bins, Auger & Related Equipment | $ | 37,500.00 | |
| Farming Equipment (see Ex. A) | $ | 145,500.00 | |
| JD 850i Gator | $ | 6,000.00 | |
| JD 9670 Combine | $ | 190,000.00 | |
| JD 8285 Row-Crop Tractor | $ | 149,500.00 | |
| Sunflower Plow | $ | 29,900.00 | |
| JD 9400 Tractor | $ | 49,900.00 | |
| MacDon FD75 Combine Heads | $ | 49,000.00 | |
| JD 1790 Planter | $ | 7,500.00 | |
| JD 2410 Chisel Plow | $ | 15,500.00 | |
| Wheat | $ | 64,320.00 | Balance remaining - portion of funds delivered to AgCarolina |
| Soybean A/R - 2,500 bushels seed soybeans (owed by Montsano) | $ | 26,000.00 | |
| Seed Premiums from Cherry | | Unknown | |
| Soybeans A/R from Cherry | $ | - | Check delivered to AgCarolina |

**Total Personal Property:**                                    $   912,947.00

**TOTAL REAL & PERSONAL PROPERTY:**                    $ 1,413,600.00

**CHRISTOPHER T. FURLOUGH**
**CASE NO. 15-02254-5-SWH**
**EXHIBIT B - LIABILITIES**

| | Clm. # | | Amount |
|---|---|---|---|
| **Class 1: Administrative Claims** | | | |
| Stubbs Perdue | | | To be determined by Court |
| Carr, Riggs & Ingram | | | To be determined by Court |
| | | | |
| **Class 2: Ad Valorem Tax Claims** | | | |
| No claims filed | | | |
| | | | |
| **Class 3: Tax Claims** | | | |
| IRS | 4 | $ | 646.97 |
| | | | |
| **Class 4: AgCarolina Farm Credit, ACA** | | | |
| Note 82-04 | 21 | $ | 145,787.51 |
| Note 82-18 | 22 | $ | 403,671.65 |
| | Total: | $ | 549,459.16 |
| | | | |
| **Class 5: AGCO Finance, LLC** | 1 | $ | 16,432.15 |
| | | | |
| **Class 6: Ally Bank** | | | |
| Note 1 | | $ | 31,000.00 |
| Note 2 | 6 | $ | 48,359.61 |
| | Total: | $ | 79,359.61 |
| | | | |
| **Class 7: BB&T** | 5 | $ | 181,694.44 |
| | | | |
| **Class 8: CNH Industrial Capital America, LLC** | | | |
| Note 1 | 2 | $ | 71,599.96 |
| Note 2 | 3 | $ | 57,104.72 |
| Note 3 | | $ | - |
| | Total: | $ | 128,704.68 |
| | | | |
| **Class 9: Deere & Company** | | | |
| Note 1 | 8 | $ | 179,849.66 |
| Note 2 | 9 | $ | 55,043.55 |
| Note 3 | 10 | $ | 194,400.66 |
| Note 4 | 11 | $ | 9,879.14 |
| Note 5 | 12 | $ | 17,128.20 |
| | Total: | $ | 456,301.21 |
| | | | |
| **Class 10: USDA Farm Service Agency** | 7 | $ | 289,839.41 |

**Class 11: Assumed Executory Contracts**
Allen, Bobbie Jean
Askew, Lois C.
Bateman, Geraldine
Blount, Kevin Wayne
Davis, Rosie
Everton, Fran

Furlough, Cindy
Furlough, Charlie Jr.
Grimes, Wayne
Horton, Bertha
Hunt-Barton, Stephanie
Jones, Steven
KCI Holdings, LLC
Mildred C. Swain Trust B                              16
NcNair, George H. Jr.
McNair, Shelton Jr.
Nixon, Perlis
Phelps, Nancy
Purrington, Clara
Spruill, John R.
Spruill, Mary
Taylor, Richard
Tera Corporation
Washington County
Wood, Verner

**Class 12: Unsecured Creditors**

| | | | |
|---|---|---|---:|
| Ag Direct, LLC | | $ | 12,000.00 |
| Ally (Est. Class 6, Note 1 deficiency claim) | | $ | 3,525.00 |
| Cities Card | | $ | 7,500.00 |
| CNH (Est. Class 8 deficiency claim) | | $ | 21,699.96 |
| Coastal AgriBusiness | | $ | 22,923.59 |
| Crop Production Services/N. American Ag Fin. | 20 | $ | 180,295.93 |
| Deere (Class 9, Note 4 Est. deficiency claim) | | $ | 3,879.14 |
| Deere (Class 9, Note 5 Est. deficiency claim) | | $ | 1,712.82 |
| East Coast Equipment | 18 | $ | 10,596.50 |
| East Coast Equipment | 19 | $ | - |
| Harvey Fertilizer & Gas Co. | 13 | $ | 47,740.38 |
| Helena | 23 | $ | 11,636.52 |
| Meherrin Agricultural & Chemical | 14 | $ | 12,441.73 |
| Meherrin Financial Services | 15 | $ | 59,726.18 |
| Monsanto Company | | $ | 26,321.89 |
| PHI Financial Services | | $ | 25,000.00 |
| Sweet Water Creek Seeds | | $ | 9,200.00 |
| | Total: | $ | 456,199.64 |

IN RE Christopher Furlough
CASE NO. 15-02254-5-SWH
EXHIBIT C - LIQUIDATION ANALYSIS

| ASSETS:<br>REAL PROPERTY | LIENHOLDER | LIEN AMOUNT | FMV | EXEMPTION | EQUITY | Notes |
|---|---|---|---|---|---|---|
| 229.94 acres, 33829 US Hwy. 64, Jamesville NC | AgCarolina | $ 145,787.51 | to be sold | | $ - | |
| | FSA | $ 289,839.41 | | | | |
| | AgCarolina | $ 403,871.65 | | | | |
| | | | | | | |
| Residence - 2.78 acres, 913 Beasley Rd. | BBT | $ 181,694.44 | $ 85,150.00 | TBE | $ - | |
| 1/2 Interest, 17 acres on Beasley Rd. | | $ - | $ 10,018.00 | | $ 10,018.00 | |
| 1/2 Interest, 73.22 acres, 718 Beasley Rd. | | $ - | $ 34,175.00 | | $ 34,175.00 | |
| 1/2 interest, 2 acres on Beasley Rd. | | $ - | $ 7,500.00 | | $ 7,500.00 | |
| 44 acres (property re-conveyd from CT Furlough & Sons | | $ - | $ 22,000.00 | | $ 22,000.00 | |
| | | Total | $ 158,843.00 | | $ 73,893.00 | |
| | | | | | | |
| PERSONAL PROPERTY: | LIENHOLDER | LIEN AMOUNT | FMV | EXEMPTION | EQUITY | |
| DIP Account - Southern Bank | | | | | | Assumes all funds used to plant soybeans |
| 1/2 interest in household goods | | | $ 1,500.00 | $ 1,500.00 | $ - | |
| Clothing | | | $ 200.00 | $ 200.00 | $ - | |
| Firearms | | | $ 1,650.00 | $ 1,650.00 | $ - | |
| IRA at Southern Bank | | | $ 3,100.00 | $ 3,100.00 | $ - | |
| CT Fourlough & Sons - 50% | AgCarolina (net lien) | | $ - | $ - | $ - | Assumes re-conveyance of prop & use of funds for soybeans |
| Machinery & Equip. | | $ 389,298.57 | $ 37,500.00 | $ - | | |
| Farm Equipment | FSA (as to grain bins only) | | $ 103,950.00 | | $ - | |
| Wheat | | | $ 64,320.00 | | | |
| Soybeans a/r | | | $ 26,000.00 | | $ - | |
| | Subtotal | $ 389,298.57 | $ 231,770.00 | | $ - | |
| | | | | | | |
| 1992 Chevy GMT 400 Farm Service Truck | | | $ 1,000.00 | | $ 1,000.00 | |
| 2012 Dodge Ram 2500 Truck | Ally | $ 31,000.00 | $ 27,475.00 | | $ - | |
| 2013 Cadillac Escalade | Ally | $ 48,359.61 | $ 47,558.00 | $ 3,500.00 | $ - | |
| JD Gator | Deere | $ 8,879.14 | surrender | | $ - | |
| JD 9670 Combine | Deere | $ 194,400.66 | $ 190,000.00 | | $ - | |
| JD 8285 Row Crop Tractor | Deere | $ 179,849.66 | $ 149,500.00 | | $ - | |
| JD 1790 Planter | Deere | $ 55,043.55 | $ 75,000.00 | | $ 19,956.45 | |
| JD 2410 Chisel Plow | Deere | $ 17,126.20 | surrender | | $ - | |
| Sunflow Plow | AGCO | $ 16,432.15 | $ 29,900.00 | | $ 13,467.85 | |
| JD 9400 Tractor | CNH | $ 71,599.96 | surrender | | $ - | |
| MacDon FD75 Combine Heads | CNH | $ 57,104.72 | $ 49,000.00 | | $ - | |
| Soybean A/R - Montisano | | | $ 26,000.00 | | | |
| Seed Premiums from Cherry | | | Unknown | | | |

| | | | |
|---|---|---|---|
| Soybeans A/R from Cherry | $ 25,000.00 | | $ 25,000.00 |
| Est. Value of Preference Actions | $ 145,270.37 | $ - | $ 145,270.37 |
| Totals: | $ 1,235,693.37 | $ 9,950.00 | $ 204,694.67 |
| | | | |
| **TOTAL EQUITY BEFORE ADMINISTRATIVE AND CHAPTER 7 EXPENSES:** | | | |
| **LESS THE FOLLOWING EXPENSES:** | | | |
| | | | |
| Chapter 7 Auctioneer Fees Personal Property with Equity | | | |
| 20% of first $20,000 | | | $ (4,000.00) |
| 10% of next $50,000 | | | $ (5,000.00) |
| 4% of balance | | | $ (8,246.81) |
| | | | |
| Chapter 7 Auctioneer Fees Real Property with Equity | | | |
| 20% of first $20,000 | | | $ (4,000.00) |
| 10% of next $50,000 | | | $ (5,000.00) |
| 4% of balance | | | $ (147.72) |
| | | | |
| Trustee's Commission | | | |
| 25% of first $5,000 | | | $ (1,250.00) |
| 10% of next $5,000 to $50,000 | | | $ (4,500.00) |
| 3% of balance | | | $ (8,995.90) |
| | | | |
| Chapter 7 Administrative Costs | | | $ (15,000.00) |
| Chapter 12 Administrative Claims (est.) | | | $ (75,000.00) |
| Priority Claims | | | $ (646.97) |
| | | | |
| **TOTAL OWED TO UNSECURED CREDITORS** | | | $ 72,907.26 |

CHRISTOPHER T. FURLOUGH
CASE NO. 15-02254-5-SWH
EXHIBIT D - 2015 FARM PLAN PROJECTIONS

Assumptions for Projections
1. Wheat is subject to a lien in favor of AgCarolina, therefore revenue from wheat is excluded
2. Expenses shown for Soybeans are expenses remaining to be paid for the 2015 crop

| REVENUE | # Acres | Bushels | Price/Bushel | | Revenue | |
|---|---|---|---|---|---|---|
| Cash in DIP Acct. | | | | | $ | 10,000.00 |
| Cash in CT Furlough & Sons Acct. | | | | | $ | 6,000.00 |
| Monsano Beans (50% booked) | 708 | 15222 | $ | 10.36 | $ | 157,699.92 |
| Monsano Beans (Non-booked) | | 15222 | $ | 9.00 | $ | 136,998.00 |
| CPS beans (Booked) | 180 | 2500 | $ | 10.01 | $ | 25,025.00 |
| CPS beans (Non-booked) | | 4340 | $ | 9.00 | $ | 39,060.00 |
| Commerical Beans | 344 | 38 | $ | 9.00 | $ | 117,648.00 |
| Corn - Preventative Planting Claim | | | | | $ | 25,000.00 |
| Seed Beans - Full Season | | | | | $ | 22,962.00 |
| Seed Beans - double crop | | | | | $ | 10,260.00 |
| Total | | | | | $ | 550,652.92 |

| REMAINING EXPENSES | | | | | | |
|---|---|---|---|---|---|---|
| Rent | | | | | $ | 50,000.00 |
| Soybean Inputs | | | | | $ | 85,000.00 |
| Crop Insurance | | | | | $ | 14,880.00 |
| Fuel | | | | | $ | 40,000.00 |
| Parts & Repair | | | | | $ | 20,000.00 |
| Labor | | | | | $ | 30,000.00 |
| Insurance - Equip., Vehicles | | | | | $ | 7,600.00 |
| Total Production Expenses: | | | | | $ | 247,480.00 |

LOAN PAYMENTS
| Financing - Interest | | | | | $ | 5,000.00 | Assume 6% interest for 6 months & some fees |

**TOTAL EXPENSES:**                          $ 252,480.00

**Chris & Michelle's living expenses**       $  38,000.00

**NET PROCEEDS REMAINING**                   $ 260,172.92

**CHRISTOPHER T. FURLOUGH**
**CASE NO. 15-02254-5-SWH**
**EXHIBIT E - PLAN PAYMENT SUMMARY FOR 2015**

| DESCRPTION | | ANNUAL PAYMENT | NOTES |
|---|---|---|---|
| **Total Amount Available** | $ | 260,172.92 | |
| | | | |
| **Plan Payments** | | | |
| Estimated Admin Claims | $ | 25,000.00 | |
| | | | |
| Priority Tax Claims | $ | 129.39 | |
| | | | |
| AgCarolina | | | |
| Note 82-04 | $ | - | Satisfied from sale |
| Note 82-18 | $ | 36,548.65 | Est. based on net balance after payment for crops & prop. |
| | | | |
| AgCo | $ | 2,568.15 | |
| | | | |
| Ally | | | |
| Note 1 | $ | 6,259.68 | Shown as annual payment |
| Note 2 | $ | 11,247.15 | |
| | | | |
| BB&T | $ | 11,704.50 | Shown as annual payment |
| | | | |
| CNH | | | |
| Note 1 | surrender | | |
| Note 2 | $ | 8,924.85 | |
| | | | |
| Deere & Company | | | |
| Note 1 | $ | 32,107.81 | |
| Note 2 | $ | 10,585.83 | |
| Note 3 | $ | 35,767.03 | |
| Note 4 | surrender | | |
| Note 5 | surrender | | |
| | | | |
| FSA | $ | - | Satisfied from sale |
| | | | |
| Unsecured Creditors | $ | 14,581.45 | 1/5 of liquidation test as minimum each year |
| | | | |
| **Total Plan Payments** | $ | 195,424.49 | |
| | | | |
| **Net Cash Remaining** | $ | 64,748.43 | |

CHRISTOPHER T. FURLOUGH
CASE NO. 15-02254-5-SWH
EXHIBIT F - VALUE OF POTENTIAL PRE-PETITION TRANSFERS

| Potential Preference Item | Total Face Amount of Potential Preferences | Amt. Used for Preference Purposes | Discount | Value of Transfer for Ex. C | Notes |
|---|---|---|---|---|---|
| Airport Farm (to be reconvyed) | | | $ - | $ - | |
| **2014 - Joint Account** | | | | | |
| Transfers to Trucking | $ 800.00 | $ 800.00 | $ - | $ 800.00 | |
| **2015 - Joint Account** | | | | | |
| None | $ - | | | | |
| **2014 - Farm Account** | | | | | |
| Transfers to Jt. Account (above) | $ 12,990.00 | $ - | $ - | $ - | |
| Transfers to Others & Michelle's bills | $ 18,910.00 | $ 18,910.00 | $ - | $ 18,910.00 | |
| **2015 - Farm Acct.** | | | | | |
| Transfers to Jt. Account (above) | $ 12,140.00 | $ - | 0% | $ - | |
| Transfers to Others & Michelle's bills | $ 60,808.67 | $ 60,808.67 | 0% | $ 60,808.67 | |
| Non-insider payments (1/22/15 to 4/22/15) | $ 89,819.08 | $ 89,819.08 | 50% | $ 44,909.54 | |
| Net proceeds from Tyrell Co. property sale | $ 16,723.10 | $ 16,723.10 | 0% | $ 16,723.10 | |
| Corn (Lake Phelps Grain checks, less what's in acct) | $ 3,119.06 | $ 3,119.06 | 0% | $ 3,119.06 | |
| **TOTAL OF POTENTIAL TRANSFERS** | | | | $ 145,270.37 | |